UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BUDDY FREEMAN, | ) |
| | ) Case No. 1:19-cv-1599 |
| Petitioner, | ) |
| | ) JUDGE SARA LIOI |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| WARDEN, DOUGLAS FENDER, | ) CARMEN E. HENDERSON |
| | ) |
| Respondent. | ) REPORT & RECOMMENDATION |

## I.  Introduction

Petitioner, Buddy Freeman, an Ohio prisoner currently serving an aggregated five-year prison term for aggravated menacing, robbery, abduction, tampering with evidence, aggravated theft, felonious assault, and stalking, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Freeman asserts three grounds for relief: (1) that there was insufficient evidence to sustain his convictions; (2) that his convictions are against the manifest weight of the evidence; and (3) that he received ineffective assistance of counsel. (ECF No. 1). Respondent, Warden Douglas Fender, filed a return of writ on November 14, 2019. (ECF No. 8). Freeman filed a traverse on December 24, 2019. (ECF No. 9).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Byrd's petition and other case-dispositive motions. Because Freeman's petition has presented only meritless or non-cognizable claims, I recommend that the Court deny Freeman's petition in its entirety and not grant him a certificate of appealability.

## II.  Relevant Factual Background

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts on direct appeal:

1

{¶2} In 2017, a Cuyahoga County Grand Jury indicted Freeman in a 36- count indictment that included varying degrees of charges for kidnapping, robbery, aggravated robbery, attempted burglary, aggravated burglary, theft, grand theft, criminal damaging or endangering, aggravated menacing, menacing by stalking, domestic violence, felonious assault, and tampering with evidence. The charges arose from incidents involving Freeman and his ex-girlfriend, Shania Tiggs-Williams. Freeman pleaded not guilty, and the case proceeded to a bench trial.

{¶3} Tiggs-Williams testified at trial that she met Freeman in 2011, and their daughter was born in 2012. She said her relationship with Freeman lasted for over six years even though it was 'rocky.'

{¶4} Tiggs-Williams described various incidents involving Freeman. She said that on August 26, 2016, after she told Freeman that she did not want to sit on the porch with him, Freeman threw bleach on her clothes and then put his hands around her neck and choked her. Tiggs-Williams got away, ran to her neighbor's apartment, and called the police. She said that Freeman kicked at her neighbor's door while she was inside. Tiggs-Williams said she subsequently told the prosecutor she did not want to prosecute Freeman for this offense because she was still in love with him.

{¶5} Tiggs-Williams said that on December 3, 2016, Freeman, who had stolen the key to Tiggs-Williams's apartment, came into her apartment without permission and told her that he would throw bleach on her if she left the apartment. Tiggs-Williams said that after Freeman left, she called the police and asked them to escort her out of her apartment, but they never came. She said that later that day, she and her daughter went across the street to Freeman's father's house. She testified that when Freeman saw her, he told her that he was going to 'beat [her] a\*\*.' He then 'tussled' with her and took the keys to her apartment out of her pocket. Tiggs-Williams said that a CMHA officer had to let her into her apartment that night.

{¶6} Tiggs-Williams testified that as she was walking to work on December 7, 2016, Freeman met up with her and walked with her. She said that when she told him she had to go to work, he became angry and told her he 'was not done talking' to her. As she tried to walk away, Freeman spit at her and grabbed her arm, ripping her jacket.

{¶7} The next incident occurred the evening of February 5, 2017. Tiggs-Williams testified that Freeman came to her apartment that evening, but they began arguing, 'things escalated,' and Freeman

2

stole her cell phone. Text records submitted by the state at trial showed that Freeman used the phone later that night to send text messages purportedly from Tiggs-Williams to Freeman stating that she was lying about the previously described incidents in order to send him to jail.

{¶8} Tiggs-Williams said she bought a car in February 2017. She said that Freeman did not own a car but would sometimes borrow a car from family or friends. She testified that on March 20, 2017, she, Freeman, and their daughter went to Chipotle in her car. Tiggs-Williams said that she let Freeman drive to avoid any confrontation. When they arrived at Chipotle, Freeman ordered Tiggs-Williams to stay in the car, which she did. Later, they stopped at Freeman's father's house so their daughter could use the bathroom. When Tiggs-Williams began to get out of the car, Freeman became angry, grabbed her, threw her to the ground, and then walked off with her car keys.

{¶9} The next day, Tiggs-Williams could not find her car. As she and her brother's girlfriend walked around looking for the car, Freeman called the brother's girlfriend and said he was going to 'shoot up' her car and 'have his people do things' to Tiggs-Williams. Tiggs-Williams testified that she was finally 'fed up' with Freeman's 'shenanigans,' so she and her brother's girlfriend went to CMHA headquarters. As they were speaking to CMHA officer Thomas Hinkle, Freeman called the brother's girlfriend again. She put the call on speaker phone, and Officer Hinkle heard Freeman threaten to 'beat [Tiggs- Williams's] a\*\*' and state that he was going to 'have it out' with the CMHA police. Officer Hinkle testified that he issued an alert for his officers to be on the lookout for Freeman.

{¶10} Tiggs-Williams testified that on March 29, 2017, as she was driving on Superior Avenue near East 65th Street, she saw Freeman driving behind her. She said he was driving 'extremely close' to the back of her car, so she pulled into a laundromat. She got out of her car, and as Freeman approached, he told her, 'I don't want no s\*\*\*; I just want to see my daughter.' However, as Freeman approached her car, Tiggs-Williams became afraid that his statement was just a ruse to snatch her keys again, so she got back in her car and drove away.

{¶11} Tiggs-Williams testified that Freeman then chased her with his car. She said that he was driving so close during the chase that she thought he was going to hit the back of her car, and that she was forced to drive 50 miles per hour in a 25 mile per hour zone as she

3

'tried to get away.' She eventually pulled into a parking lot at East 71st Street and Wade Park Avenue where she flagged down a CMHA officer.

{¶12} CMHA patrolman Jack Justis testified he and other CMHA officers were in the parking lot that day investigating a report of drug activity in the area. He said that Tiggs-Williams drove into the parking lot 'at a high rate of speed' and 'started screaming for help.' Officer Justis said she told him and the other CMHA officers that 'her ex-boyfriend, Buddy Freeman, was chasing her in a car and was trying to hit her.'

{¶13} Officer Justis testified that he was aware of Freeman because of the prior alert, and that Freeman was known to possess firearms and to have made threats to fight with and kill police officers. Two CMHA officers advised Justis that they had seen the car that Tiggs-Williams said Freeman had been driving. A short time later, Justis found the abandoned car near East 71st Street and Melrose Avenue. Justis called a K-9 officer to assist with the search for Freeman; they eventually found him hiding behind an abandoned washer and dryer in the backyard of a nearby home.

{¶14} The trial court found Freeman guilty as set forth above and sentenced him to an aggregate term of five years in prison. This appeal followed.

(ECF No. 8-1 at Ex. 8.)

### III. Relevant State Procedural History

#### A. State Court Conviction

On April 11, 2017, a Cuyahoga County, Ohio grand jury indicted Freeman on four counts of kidnapping under Ohio Rev. Code § 2905.01(A)(2) (Counts 1, 11, 15, and 22); two counts of aggravated burglary under Ohio Rev. Code § 2911.11(A)(1) (Counts 2 and 8); one count of attempted burglary under Ohio Rev. Code § 2923.02/2911.12(A)(1) (Count 3); two counts of criminal damaging or endangering under Ohio Rev. Code § 2909.06(A)(1) (Counts 4 and 17); three counts of robbery under Ohio Rev. Code § 2911.02(A)(2) (Counts 5, 13, and 24); five counts of aggravated menacing under Ohio Rev. Code § 2903.21(A) (Counts 6, 10, 27, 29 and 30); five

4

counts of theft under Ohio Rev. Code § 2913.02(A)(1) (Counts 7, 14, 19, 25, and 26); six counts of domestic violence under Ohio Rev. Code § 2919.25(A)/(C) (Counts 9, 12, 16, 23, 28, and 33); one count of burglary under Ohio Rev. Code § 2911.12(A)(2) (Count 18); two counts of tampering with evidence under Ohio Rev. Code § 2921.12 (A)(1)/(2) (Counts 20 and 21); one count of grand theft under Ohio Rev. Code § 2913.02 (A)(1) (Count 31); one count of felonious assault under Ohio Rev. Code § 2903.11(A)(2) (Count 32); two counts of menacing by stalking under Ohio Rev. Code § 2903.21(A)/(A)(1) (Counts 33 and 34); and one count of intimidation of a crime victim or witness under Ohio Rev. Code § 2921.04(B)(1) (Count 36). (ECF No. 8-1 at Ex. 1).

On July 24, 2017, Freeman's trial commenced, and he signed a waiver requesting a bench trial. (ECF No. 8-1 at Ex. 2). The State then moved to amend several of the counts as follows: Counts 1, 11, and 15 were amended from kidnapping to abduction under Ohio Rev. Code § 2905.02; and Counts 9, 12, 16, 23 and 33 were amended to delete the "furthermore" clause in the domestic violence charges, thereby reducing Counts 12 and 33 to first degree misdemeanors and reducing Counts 9, 12, 16 and 23 to fourth degree misdemeanors. (ECF No. 8-1 at Ex. 3); (ECF No. 8 at 5). The court found Freeman guilty of abduction (as amended in Counts 1, 11, 15), aggravated menacing (Counts 10, 27, 30), criminal damaging (Counts 4, 17), domestic violence (as amended in Counts 9, 12, 16, 23, 28, 33), felonious assault (Counts 32), grand theft (Counts 31), menacing by stalking (Counts 34, 35), robbery (Count 13), tampering with evidence (Counts 20, 21) and theft, aggravated theft (Counts 7, 14, 19, 25, 26). (ECF No. 8-1 at Ex. 3). After merging some counts for sentencing, the State elected to sentence on Counts 10, 13, 15, 21, 25, 27, 32, and 34. (*Id.*) On September 18, 2017, the trial court sentenced Freeman to serve an aggregate five-year sentence. (ECF No. 8-1 at Ex. 4).

### B. Direct Appeal

On October 13, 2017, Freeman, then represented by counsel, directly appealed. (ECF No. 8-1 at Ex. 5). Freeman raised the following assignments of error:

> **Assignment of Error I:** There is insufficient evidence to support Mr. Freeman's conviction for a Felonious Assault and the conviction is against the manifest weight of the evidence.
>
> **Assignment of Error II:** There is insufficient evidence to support Mr. Freeman's conviction for a count of Domestic Violence alleged to have occurred on March 29, 2017 and the conviction is against the manifest weight of the evidence.
>
> **Assignment of Error III:** Mr. Freeman received ineffective assistance of counsel when counsel failed to move for dismissal pursuant to Rule 29 for the count of Felonious Assault with the use of a motor vehicle and count of Domestic Violence alleged to have occurred on March 29, 2017.

(ECF No. 8-1 at Ex. 6). On August 30, 2018, the Ohio Court of Appeals affirmed Freeman's convictions and sentence. (ECF No. 8-1 at Ex. 8). The Ohio Court of Appeals held that Freeman's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. (ECF No. 5-1 at Ex. 6). Additionally, the Ohio Court of Appeals held that Freeman's "[c]ounsel was not ineffective in not moving for dismissal of Counts 32 and 33 under Crim.R.29." (ECF No. 5-1 at Ex. 6).

### C. Appeal to the Ohio Supreme Court

On October 15, 2018, Freeman, then represented by counsel, appealed to the Supreme Court of Ohio. (ECF No. 8-1 at Ex. 9). Freeman's memorandum in support of jurisdiction raised the following proposition of law:

> **Proposition of Law I:** The act of driving a motor vehicle so closely to the rear of another vehicle as to cause of the other driver to believe a collision is imminent, without additional evidence regarding the actor's intent, is insufficient to constitute the offense of felonious assault.

6

(ECF No. 8-1 at Ex. 10). On December 26, 2018, the Supreme Court of Ohio declined jurisdiction. (ECF No. 8-1 at Ex. 12).

### IV. Federal Habeas Corpus Petition

On July 8, 2019,[1] Freeman petitioned *pro se* for a writ of habeas corpus from this Court. (ECF No. 1). Freeman asserted the following grounds for relief:

> **Ground One:** Freeman's convictions are against the manifest weight of the evidence. Thereby, the evidence was insufficient to support Freeman's guilty verdict.
>
> **Ground Two:** There is insufficient evidence to support Freeman's conviction for Domestic Violence and the evidence is against the manifest weight of the evidence.
>
> **Ground Three:** Freeman received ineffective assistance of counsel when counsel failed to move for dismissal pursuant to Rule 29 for count of Felonious Assault and Domestic Violence.

(ECF No. 1).

### V. Legal Standards

#### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced

---

[1] The Warden states that Freeman's petition was filed on July 12, 2019—the date it was filed on the electronic docket. However, applying the prison mailbox rule, whereby "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court" (*Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008)), the court recognizes that it was filed on July 8, 2019—the date Freeman certified that it was placed into the prison mailing system. Nevertheless, this distinction is inconsequential as Freeman's petition is timely either way.

Freeman, and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Freeman's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### C. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

8

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous." *Id.* "The state court's application of clearly established law must be objectively unreasonable." *Id.*

9

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

10

**VI.    Analysis**

    **A.  Ground One**

In his petition, Freeman generally asserts that his convictions are against the manifest weight of the evidence and that the evidence was insufficient to support his guilty verdict. (ECF No. 1). However, in his memorandum of law, Freeman specifically alleges that there is insufficient evidence to support his conviction for felonious assault and that the conviction is against the manifest weight of the evidence. (ECF No. 1-1 at 4). Thus, the court will address Freeman's more specific claim—insufficient evidence—argued in his memorandum of law.[2]

Federal habeas review is available for insufficient evidence arguments. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Herrera v. Collins*, 506 U.S. 390, 401 (1993). For a federal habeas corpus court, the relevant question on review of the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera*, 506 U.S. at 402 (emphasis in original).

"Because both the *Jackson v. Virginia* standard and AEDPA apply to [Freeman's sufficiency of the evidence claim], 'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; [and] second,

---

[2] Additionally, as the Warden noted, Freeman previously raised the claims in state court that his felonious assault and domestic violence convictions were supported by insufficient evidence and against the manifest weight of the evidence. Because only claims regarding these specific convictions were exhausted in state court, only those claims are properly before this court.

deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit applies this two-step analysis as follows:

> First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict Stewart. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find Stewart guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).

Freeman argues that there was insufficient evidence to support his conviction for felonious assault. (ECF No. 1-1). Specifically, Freeman argues that there is "no evidence … to support that [he] was trying to hit [Ms. Williams-Tiggs' car with his car] and that she was required to drive in such a way [as] to avoid being hit." (ECF No. 1-1 at 9). The Ohio Court of Appeals rejected that argument:

> {¶21} Freeman was convicted in Count 32 of felonious assault in violation of R.C. 2903.11(A)(2), which states that '[n]o person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon,' in this case a motor vehicle. A person acts knowingly 'when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.' R.C. 2901.22(B).
>
> {¶22} Freeman asserts that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because there was insufficient evidence that he tried to cause physical harm to Tiggs-Williams on March 29, 2017. He argues that there was no evidence that he tried to hit her with his car or that she had to do anything when she was driving to avoid being hit. In short, he contends there is no evidence that he used his car as a deadly weapon. We disagree.

> {¶23} Upon our review of the evidence, we find there was sufficient evidence to prove that Freeman knowingly attempted to cause physical harm to Tiggs-Williams with the vehicle he was driving. Tiggs-Williams testified that Freeman chased her car so fast and so close that she thought he was going to hit the back of her car as they were driving. She testified further that she was forced to drive 50 miles per hour in a 25 mile per hour zone in order to avoid being hit as she tried to get away. Officer Justis corroborated Tiggs-Williams's testimony; he said that when Tiggs-Williams pulled into the parking lot at a high rate of speed, she screamed that she needed help because Freeman was trying to hit her.
>
> {¶24} Viewing this evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. Accordingly, Freeman's conviction was supported by sufficient evidence.

(ECF No. 8-1 at Ex. 8.)

The Court agrees. The Ohio Court of Appeals correctly detailed the elements of felonious assault. Ohio Rev. Code § 2903.11(A)(2) provides in relevant part that:

> (A) No person shall knowingly …:
>
> …
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

Here, the State presented sufficient evidence at trial that Freeman knowingly attempted to cause physical harm to Ms. Tiggs-Williams by means of a deadly weapon—a speeding car. The record demonstrates that the victim testified that she was driving approximately 50 miles per hour in a 25-mile-per-hour zone because Freeman was chasing her in a separate vehicle. (ECF No. 8-1 at Ex. 13). She testified that Freeman was close enough to her that she "thought he was going to hit the back of [her car]." (*Id.*) She testified that she was driving that fast to get away from him. (*Id.*) She testified that, once she got away from him, she immediately engaged Officer Justis and recounted that she was "just getting chased" by Freeman. (*Id.*)

13

The Court must look at that evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. In that light, a rational trier of fact could have found that Freeman was attempting to use the car he was driving as a deadly weapon to hit the car Ms. Tiggs-Williams was driving and cause her physical harm.[3] Because the Court finds that there was sufficient evidence to support Freeman's conviction for felonious assault, the Court must defer to the trial court's guilty verdict. *Davis*, 658 F.3d at 531.

Freeman also asserted that his felonious assault conviction was against the manifest weight of the evidence. This argument fails because manifest-weight-of-the-evidence questions do not present federal issues. *See Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *see also Steele v. Tambi*, Case No. 1:05-CV-00178, 2007 U.S. Dist. LEXIS 33318, at *38 (N.D. Ohio 2007). It is well-settled that claims regarding the manifest weight of the evidence are state law claims that cannot be reviewed in a federal habeas proceeding. *See*, *e.g.*, *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (noting that the due process clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence; it provides relief only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).

In sum, one of Freeman's Ground One claims lacks merit and the other fails to raise a cognizable claim. Therefore, I recommend that Freeman's Ground One claims be dismissed with prejudice.

---

[3] Freeman does not challenge the sufficiency of the evidence that supports the finding that he *knowingly* acted in a criminal manner; thus, that question is not before the Court. But were it, then the Court would again concur with the Ohio Court of Appeals that the finding is supported by sufficient evidence. (*See* ECF No. 8-1 at Ex. 8, ¶23); *see also* Ohio Rev. Code § 2901.22 ("A person acts knowingly, regardless of purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature.").

**B. Ground Two**

Freeman also asserts that there is insufficient evidence to support his domestic violence conviction arising from the events of March 29, 2017—the same events described above—and that it is against the manifest weight of the evidence. Freeman argues that, because there was insufficient evidence to support his felonious assault conviction, there is also insufficient evidence to support his domestic violence conviction. Specifically, Freeman argues that there is insufficient evidence that he attempted to cause physical harm to Ms. Tiggs-Williams. The Ohio Court of Appeals rejected this argument, too:

> {¶26} Freeman next contends that his conviction for domestic violence relating to the events of March 29, 2017, is not supported by sufficient evidence and is against the manifest weight of the evidence.
>
> {¶27} Freeman was convicted in Count 33 of domestic violence in violation of R.C. 2919.25(A), which provides that '[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member.'
>
> {¶28} Freeman asserts that his conviction for domestic violence was not supported by sufficient evidence and was against the manifest weight of the evidence because[,] other than the incident on March 29, 2017, involving the car chase, which resulted in the felonious assault conviction, 'there was no other evidence relating to a domestic violence incident' that day. Freeman's argument is without merit because the evidence relating to the domestic violence charge is the same as that relating to the felonious assault charge.
>
> {¶29} The evidence established that Freeman tried to hit Tiggs-Williams's car on March 29, 2017, when he chased her so close and so fast that she was forced to drive 50 miles per hour in a 25-mile-per-hour zone to avoid being hit.
>
> {¶30} For purposes of the domestic violence statute, a person can be considered a 'family or household member' if she is 'the natural parent of any child of whom the offender is the other natural parent * * *. R.C. 2919.25(F)(1)(b). It is undisputed that Freeman and Tiggs-Williams had a child together. Thus, under R.C.

15

> 2919.25(F)(1)(b), Tiggs-Williams qualified as a 'family or household member.'
>
> {¶31} Accordingly, viewing the evidence in a light most favorable to the prosecution, the trial court could have concluded beyond a reasonable doubt that Freeman knowingly attempted to cause physical harm to a family or household member in violation of R.C. 2919.25(A). Thus, the conviction is supported by sufficient evidence.

(ECF No. 8-1 at Ex. 8.)

The Court agrees. The Ohio Court of Appeals correctly detailed the elements of domestic violence. Ohio Rev. Code § 2919.25(A) provides in relevant part that:

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

Here, as discussed above regarding the sufficiency of the evidence to support Freeman's felonious assault conviction, the State presented sufficient evidence at trial that Freeman attempted to cause physical harm to Ms. Tiggs-Williams. Accordingly, the Court must defer to the trial court's guilty verdict. *Davis*, 658 F.3d at 531.

Freeman also asserts that his domestic conviction was against the manifest weight of the evidence. As noted above, this argument fails because manifest-weight-of-the-evidence questions do not present federal issues. *See Tibbs*, 457 U.S. at 45); *see also Steele*, 2007 U.S. Dist. LEXIS 33318, at *38.

Similar to Freeman's Ground One claims, one of Freeman's Ground Two claims lacks merit and the other fails to raise a cognizable claim. Therefore, I recommend that Freeman's Ground Two claims be dismissed with prejudice.

### C. Ground Three

Freeman's Ground Three claim asserts ineffective assistance of counsel. He contends that his trial counsel failed to move for acquittal under Ohio Crim. R. 29 on his felonious assault and

16

domestic violence convictions at the end of the trial. (ECF No. 1-1). The Ohio Court of Appeals rejected this argument, too:

> {¶34} To establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation was deficient in that it 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that but for counsel unprofessional errors, the result of the proceeding would have been different.' *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002- Ohio 350, 761 N.E.2d 18, (2002), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694.
>
> {¶35} A Crim. R. 29 motion challenges the sufficiency of the evidence. Under Crim. R. 29(A), after the evidence on either side is closed, and upon motion by the defendant or on its own, the court shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction of the offense or offenses.
>
> {¶36} Freeman contends that because there was insufficient evidence to support convictions on Counts 32 and 33, there is a 'strong likelihood' the trial court would have dismissed both counts if trial counsel had moved for their dismissal under Crim. R. 29(A). Accordingly, he contends, counsel was ineffective for not doing so. We disagree.
>
> {¶37} Counsel was not ineffective in not moving for dismissal of Counts 32 and 33 under Crim. R. 29 because, as discussed above, the state presented sufficient evidence to support convictions on both counts. The third assignment of error is therefore overruled.

(ECF No. 8-1 at Ex. 8).

The Court agrees. Because the Ohio Court of Appeals adjudicated Freeman's ineffective-assistance-of-counsel claims on the merits, this court must give AEDPA deference to that adjudication. *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). The Ohio Court of Appeals correctly noted that such claims are judged under the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's representation fell

17

below an objective standard of reasonableness and, therefore, was deficient. *Id*. at 687-88. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense. *Id*. at 692. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Freeman has not demonstrated that the state court's determination was contrary to, or an unreasonable application of, clearly established federal law. As discussed above, there was sufficient evidence to support Freeman's felonious assault and domestic violence convictions. Therefore, Freeman's trial counsel was not deficient for failing to move for acquittal on his felonious assault and domestic violence convictions. Moreover, since there is sufficient evidence to support his convictions, Freeman cannot demonstrate prejudice, as moving to acquit under Ohio Crim. R. 29 would not have changed the result of the proceeding.[4]

The Court finds that Freeman is unable to establish an ineffective-assistance-of-counsel claim. Thus, I recommend that Freeman's Ground Three claim be dismissed on the merits.

## VII. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on

---

[4] Freeman appears to concede that trial the trial court would most likely have ruled against his defense. (ECF No. 9 at 12). However, he argues that trial counsel was still ineffective because counsel failed to preserve the issue for appeal. This argument is equally unpersuasive, as there was sufficient evidence to support Freeman's convictions and, therefore, he would not have prevailed on appeal.

appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

Freeman's Ground One and Ground Two claims either lack merit or fail to present a cognizable issue for habeas review, and his Ground Three claim lacks merit. If the Court accepts the foregoing recommendation, then Freeman has not made a substantial showing of a denial of a constitutional right; thus, I recommend that the Court not issue a certificate of appealability.

### VIII. Recommendation

Because Freeman's petition has presented only meritless or non-cognizable claims, I recommend that the Court deny Freeman's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in its entirety and not grant him a certificate of appealability.

DATED: January 5, 2021

                                     *Carmen E. Henderson*
                                     **Carmen E. Henderson**
                                     **United States Magistrate Judge**

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).